UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**JOHN JORDAN**                                                                                                           **PLAINTIFF**

**v.**                                                                                  **CIVIL ACTION NO. 4:07CV-P107-M**

**UNKNOWN COL. ROWLAND** *et al.*                                                                **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court for *sua sponte* screening of the complaint (DN 1) and amended complaint (DN 8) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

**I.**

Plaintiff John Jordan, a federal inmate, filed a *pro se* complaint and amended complaint pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390-97 (1971). He alleges that as a pretrial detainee at the Henderson County Detention Center ("HCDC"), he experienced overcrowding, assaults by prisoners, inadequate medical care, and imposition of false disciplinary charges. The details will be described in greater depth in the body of this decision. Plaintiff brings suit against the following twelve individuals: HCDC Col. Rowland; HCDC Cpl. Gordan; HCDC Coordinator Blake; three unknown officers; an unknown male nurse; HCDC state inmate Christen; U.S. Attorney Matthew Brookman; two unknown U.S. Marshals; and DEA Officer Rob Hornbrook. He sues Defendant Christen in his individual capacity; sues Defendants Brookman and the two unknown U.S. Marshals in their official capacities; and sues all other Defendants in both their individual and official capacities. As relief, Plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion thereof, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, a court must "look for plausibility in th[e] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted; alteration in *Twombly*). In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent'

with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

Plaintiff divides his allegations into three sections based on chronology. The Court will analyze the sections as set out by Plaintiff.

### A. Claim 1 (overcrowding) and claim 2 (fear for personal safety)

Plaintiff reports that he arrived at the HCDC as a federal inmate on February 14, 2005, at which time and against his wishes, he was placed in a cell with state inmates and forced to sleep on the floor due to overcrowding. Two days later, he was moved to a cell with only state inmates and forced to sleep on the floor for over a month. Less than four months later, Plaintiff was incarcerated with nine new state inmates "just getting off the bus." Plaintiff complained to HCDC officials and U.S. Marshals to move him from HCDC due to the tension he felt with the state inmates. The U.S. Marshals denied his request to transfer to Grayson County Detention Center. After about three weeks, Cpl. Gordan called Plaintiff out of the cell, but before Cpl. Gordan could close the door, a state inmate rushed through the door and punched Plaintiff in the face. Plaintiff was forced to defend himself because Cpl. Gordan and "'Unknown others'" failed to protect Plaintiff from the assault. Plaintiff was punished by being placed in segregation, even

3

though Cpl. Gordan advised that Plaintiff acted only in self defense. Plaintiff was placed in isolation with a state inmate against his pleas.

Upon release from segregation, he was placed in a cell with seven state inmates and two federal inmates. The tension remained between Plaintiff and the state inmates. After three weeks of tension, while Plaintiff was writing and talking at a table, state inmate Christen said, "Hey Bitch," and swung at Plaintiff. Plaintiff and Christen "fought for quite some time without staff intervention." Christen grabbed two pencils and threatened to stab Plaintiff. When Plaintiff retreated, with his back turned, Christen reached around Plaintiff and stabbed him in the right eye, "seriously causing damages." Plaintiff went to the bathroom to try to control the bleeding. As Plaintiff tried to exit the bathroom, Christen hit him with an ice cooler over the head. He then rushed at Plaintiff, pushing him into the shower, grabbing the shower rod, and hitting him in his head, arms and torso. Plaintiff was again forced to use self defense as no officers were present. Thereafter, at around 3:00 a.m. on August 26, 2005, an Unknown Lieutenant and two other officers rushed in and stopped the assault. Plaintiff and Christen were placed in segregation, and Plaintiff was "checked out" and advised by a lieutenant that "you need stitches."

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). An action pursuant to the *Bivens* doctrine is subject to the same statute of limitation as § 1983 actions. *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987).

Although state law establishes the statute of limitations for § 1983 and *Bivens* actions, federal law controls on the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Federal law establishes that the statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

The Supreme Court has recently held that when the face of the complaint shows that an action is time barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007).

According to the facts as described by Plaintiff, his overcrowding and fear-of-personal-safety claims accrued at the latest on August 26, 2005, and the limitations period with respect to those claims, therefore, expired one year later on August 26, 2006. Because Plaintiff did not file the complaint until August 7, 2007,[1] those claims are untimely and must be dismissed.

### B. Claim 3 (inadequate medical care)

Plaintiff claims that he received inadequate medical care beginning immediately after the assault by Christen. Plaintiff reports that at approximately 3:15 a.m. on August 26, 2005, an unknown male nurse asked Plaintiff what was used to injure his eye, and a lieutenant said a pencil. Pictures were taken of Plaintiff's eyes. About ten minutes later, Plaintiff advised that he still felt something in his eye. The male nurse said that he was not going to touch Plaintiff and that "'You just have to wait until you go to the hospital.'" Plaintiff was transported to the

---

[1] Under the "prison mailbox rule," "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Absent evidence to the contrary, the Court presumes that Plaintiff delivered the complaint to the prisoner mail system for mailing on August 7, 2007, the date he signed the complaint.

5

hospital around 5:00 a.m. and told the doctor that he was stabbed with a pencil about three hours earlier. The doctor asked, "'why wasn't you eye flushed out," to which Plaintiff responded that the nurse would not touch him. The doctor cleaned and stitched Plaintiff's eye, ordered a CT scan, and made an appointment for Plaintiff with an eye specialist in the morning. Plaintiff was then transported back to HCDC.

At HCDC, the U.S. Marshal for Evansville, Indiana, and DEA Officer Hornbrook advised Plaintiff that he could not make a statement about the stabbing event because they had already received statements from everyone else in the cell. They told Plaintiff that they were going to let the jail handle the situation and left, denying his request to be placed with only other federal inmates and launch a full investigation.

Plaintiff was placed in the cell across from the booking desk and waited for several hours before being taken to the Ohio Valley Eye Institute. The specialist advised him that he lost some sight to due to the injury and made an appointment for Plaintiff to return in thirty days. The specialist gave the appointment to HCDC Coordinator Blake to give to the medical department at HCDC so that they would know when to return Plaintiff for follow up. Plaintiff, however, was not returned to the specialist, despite repeated requests to medical staff and jailers, the filing of a grievance, and repeated requests to the U.S. Marshals.

Like claims 1 and 2, Plaintiff's third claim that he received inadequate medical care is also time barred. According to Plaintiff, the unknown male nurse would not treat him on August 26, 2005, and the follow-up appointment with the eye specialist was scheduled for thirty days after the initial appointment on August 27, 2005. The one-year limitations period would necessarily have expired around the end of September 2006 or the beginning of October 2006,

rendering the inadequate-medical-treatment claim contained in Plaintiff's August 7, 2007, complaint untimely.

### C. Claim 4 (*false disciplinary charges*)

Upon return to HCDC, Plaintiff was returned to the cell in which he was stabbed, and about a week later, he was placed in isolation, where he was to serve thirty days for fighting. He reports, however, that he served twenty days in segregation for no just cause and was then returned to the cell where he was stabbed. Plaintiff became "distraught" and filled out a medical form complaining of headaches and stress from the past attacks and from fear of future attacks.

Plaintiff reports that on October 26, 2005, he was sentenced in court, and about two weeks thereafter, three officers walked into his cell. One of the officers told a state inmate housed in the same cell to slide over and the officer laid down next to the state inmate. (Plaintiff reports that the officer was fired for this act in November 2005.) "The plaintiff stressed his concerns of deliberate taunts, and demanded the officers to, 'please stop.'" Plaintiff asked Unknown Defendants to contact Col. Rowland, but the officers refused. Thereafter, "the defendants" placed Plaintiff in isolation in retaliation, and an Unknown Defendant pepper-sprayed him. Plaintiff was eventually released from the cell after speaking to Col. Rowland "but was further subjected to pains and suffering, being strapped to a big black chair." About fifteen minutes later, a U.S. Marshal saw Plaintiff strapped to the chair in the hallway and asked Plaintiff what happened. Plaintiff told the U.S. Marshal that he would tell him if he would step closer to him, but the U.S. Marshal walked out the door "signaling the plaintiff with a hand jester, 'forget you.'"

Thereafter, on November 19, 2005, "Spencer County Indiana" picked up Plaintiff from HCDC, where Plaintiff was still being held "unjustly in isolation." The Spencer County officials returned Plaintiff to Rockport Jail from November 19, 2005, through February 15, 2006. Then the U.S. Marshal transported Plaintiff, after court, back to HCDC against Plaintiff's expressed fears and pleas. Plaintiff claims that he was again retaliated against and placed in isolation. Unknown staff told Plaintiff that the isolation time was still owed to Plaintiff before he left the jail in November 2005. Plaintiff reports serving ten more days in isolation and then being placed in a cell where he was threatened. "The jailer 'unknown' was not going to move the plaintiff until his family called from Virginia, and told the HCDC staff what they heard about the incidents against the plaintiff as related over the phone by the plaintiff." Plaintiff was then immediately moved to an empty, ten-man cell until the next day, when nine, new-entry, state inmates were placed in the cell with him. About two-and-one-half weeks later, after constantly complaining, Plaintiff was transferred to the Grayson County Detention Center, where only federal inmates were housed. Six days later, he was transferred to F.C.I. Beckley.

Plaintiff reports that he was initially transferred from the HCDC on November 19, 2005, to Indiana. Any actions on or prior to November 19, 2005, which constituted Plaintiff's false-disciplinary-charges claim is, therefore, untimely because the complaint was not filed on or before the expiration of the limitations period on November 19, 2006.

Plaintiff further reports that he was returned to HCDC on February 15, 2006; served ten days in isolation; was moved to a cell where he was threatened; was immediately moved to a ten-man cell; and, less than three weeks later, was transferred to Grayson County Detention Center. Even liberally reading Plaintiff's facts, it appears that he was transferred from HCDC to Grayson

8

County Detention Center by the end of April or even May 2006, at the latest. By not filing the complaint until well over a year later on August 7, 2007, however, any claims accruing prior to his transfer from the HCDC are time barred and must be dismissed.

The Court will enter a separate Order of dismissal consistent with this Memorandum Opinion.

Date: April 10, 2009

**Joseph H. McKinley, Jr., Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Defendants
4414.005